IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NOMUDA INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>ATCS, P.L.C.,<br><br>        Defendant. | Civil No. 25-1058 (GMM) |

**OPINION AND ORDER**

Before the Court is Defendant ATCS, P.L.C.'s ("Defendant" or "ATCS") *Amended Motion to Dismiss* at Docket No. 23, which challenges Plaintiff NoMuda Inc.'s ("Plaintiff" or "NoMuda") *First Amended Complaint* ("Amended Complaint") at Docket No. 17. For the reasons set forth below, the Court **GRANTS** the *Motion to Dismiss*.

    **I.**    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Hurricane María struck Puerto Rico in September 2017, causing widespread devastation, impairing critical infrastructure, disrupting power and communications systems, and displacing thousands of residents. (Docket No. 17 ¶ 6).

In response, the United States Department of Homeland Security ("DHS"), through the Federal Emergency Management Agency ("FEMA"), provided remediation services on the island from 2017 through at least 2019. (Id. ¶ 7). To enhance efficiency and productivity in these efforts, FEMA pursued professional training initiatives. (Id. ¶ 8).

A complex web of contracts and subcontracts arose in furtherance of these objectives, with the parties in this case occupying different positions within that contractual chain. FEMA contracted with Defendant ATCS pursuant to Contract No. HSFE80-16-A-00004, issued in May 2018, which included Task Order No. 70FB8018F00000070 ("Task Order"). (Id.). The Task Order's Statement of Work ("SOW") required ATCS and its subcontractors to implement process-improvement efforts within FEMA, including Lean Six Sigma ("LSS") training programs for FEMA personnel. (Id. ¶¶ 9, 14, 33).

ATCS relied on multiple subcontractors to perform the Task Order. One such subcontractor was CPI Group International, Inc. ("CPI"), now known as AYFI Group, Inc. (Id. ¶ 10). CPI, ATCS, and other subcontractors collectively operated as an LSS Team. (Id. at 3 n.2). Early in the project, FEMA personnel allegedly sought to expand the LSS program beyond the scope authorized by the SOW to include individualized mentoring, tailored training, and development of an internal FEMA certification program. (Id. ¶¶ 11-12).

On August 20, 2018, the LSS Team advised FEMA that these changes would require substantial amendments to the SOW, identifying fifty-two discrete tasks, forty-three of which fell outside the existing scope. (Id. ¶¶ 12-13). FEMA's Chief of Staff,

Ana Bonilla ("COS Bonilla"), allegedly represented that the SOW would be amended accordingly. (Id. ¶ 15).

To support the expanded work, NoMuda was incorporated in September 2018 and functioned as a third-tier subcontractor. (Id. ¶¶ 18-20). A FEMA program manager directed NoMuda to contract with CPI, and the parties executed the NoMuda/CPI Agreement on October 9, 2018. (Id. ¶¶ 22-24).

The Agreement vested CPI with "sole authority" to adjust subcontract pricing and permitted unilateral changes within the general scope of the contract, subject to equitable adjustments. (Id. ¶ 24). NoMuda began performing work shortly thereafter but repeatedly expressed concern that it was performing work beyond the SOW without compensation. (Id. ¶¶ 26-27).

Throughout late 2018 and early 2019, NoMuda raised concerns with FEMA, ATCS, and CPI regarding the lack of a formal SOW modification. (Id. ¶¶ 29-38). LSS Team meetings continued, during which NoMuda allegedly warned that it would pursue complaints with DHS's Office of Inspector General ("OIG") and Congress if the SOW was not amended. (Id. ¶¶ 41-42).

By early 2019, NoMuda had allegedly gone months without payment and incurred substantial personal debt to cover operating expenses. (Id. ¶ 46). In February 2019, NoMuda asserted to ATCS that requiring uncompensated work violated the Anti-Deficiency Act. (Id. ¶ 51). Later, agents of NoMuda filed a claim against

Civil No. 25-1058 (GMM)
Page -4-

ATCS under the Whistleblowers Protection Act. (Id. ¶ 62). The OIG ultimately sided with NoMuda. (Id.).

On or about May 1, 2019, FEMA ordered a halt to all LSS activities pending modification of the Task Order. (Id. ¶ 59). FEMA ultimately terminated the Task Order by June 7, 2019. (Id. ¶ 70). On July 1, 2019, CPI notified NoMuda, allegedly at ATCS's direction, that CPI was terminating the NoMuda/CPI Agreement. (Id. ¶ 74).

NoMuda later learned that ATCS negotiated a Request for Equitable Adjustment ("REA") with FEMA in July 2019, which allegedly failed to account for NoMuda's work. (Id. ¶¶ 76-78). Plaintiff asserts it did not learn of the REA until February 2024.

On January 31, 2025, NoMuda filed its *Complaint*. (Docket No. 1). Following amendments and briefing, Defendant filed the present *Amended Motion to Dismiss*, arguing in part that Plaintiff fails to state a claim because the issues are time-barred and fails to join necessary parties. (Docket No. 23). The motion is fully briefed and ripe for disposition.

## II.    LEGAL STANDARD

### A.    Fed. R. Civ. P. 12(b)(6)

Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A Rule 12(b)(6) motion under the Federal Rules of Civil Procedure tests

the legal sufficiency of the complaint, not the merits. Twum-Baah v. Dep't of Agric., 299 F. Supp. 3d 369, 372 (D.P.R. 2018).

To survive dismissal, a complaint must state a plausible claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts accept well-pleaded facts as true but disregard legal conclusions and conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Affirmative defenses, including statutes of limitations, may be resolved at the pleading stage when the facts establishing the defense appear on the face of the complaint. Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008) (internal quotation omitted). When the dates included in the complaint demonstrate that the statute of limitations has passed, absent grounds for an exception, dismissal is warranted.

**B.     Fed. R. Civ. P. 9(b)**

Fraud claims must satisfy Rule 9(b), which requires pleading the time, place, and content of the alleged misrepresentation, as well as the identity of the speaker. New Eng. Data Servs., Inc. v. Becher, 829 F.2d 286, 288 (1st Cir. 1987).

### III.   MOTION TO DISMISS

A federal court sitting in diversity applies state substantive law and federal procedural law. Suero-Algarín v. CMT Hosp. HIMA San Pablo Caguas, 957 F.3d 30, 39 (1st Cir. 2020). Because the relevant conduct occurred before the enactment of the

2020 Puerto Rico Civil Code, the Civil Code of 1930 governs. P.R. Laws Ann. tit. 31 §§ 5141, 5298.

A.   **Tortious Interference with Contractual Relationships**

Puerto Rico law imposes a one-year statute of limitations on tort claims, running from the time the plaintiff has knowledge of the injury and of the person who caused it. Rodríguez-Surís v. Montesinos, 123 F.3d 10, 13-14 (1st Cir. 1997).

Knowledge may be actual or deemed, arising when a reasonably diligent person would have sufficient facts to investigate and seek legal relief. Villarini-García v. Hosp. del Maestro, Inc., 8 F.3d 81, 84 (1st Cir. 1993).

Here, Plaintiff's own pleadings establish that by July 2019, NoMuda knew it had suffered economic injury from unpaid work, knew its subcontract had been terminated, and believed ATCS played a causal role in that termination. *See* (Docket No. 17 at 9-10, 14-18). These facts were sufficient to trigger the statute of limitations, even without knowledge of the REA. *See* Rivera-Carrasquillo v. Centro Ecuestre Madrigal, Inc., 812 F.3d 213, 216 (1st Cir. 2016).

Because NoMuda did not file suit until January 2025 — nearly six years later — its tortious interference claim is time-barred and must be dismissed under Rule 12(b)(6).

**B.   Fraud/Deceit**

Plaintiff's fraud claim fails for two independent reasons. First, it is time-barred for the same reasons discussed above. See (Docket No. 17 at 7-8, 10, 15). Second, the *Amended Complaint* does not satisfy Rule 9(b). Plaintiff does not identify the speaker, the timing, the place, or the specific content of the alleged misrepresentations. *See, e.g.*, (id. at 15) (failing to identify who from ATCS said, when, and where the alleged lie that "SOW was compliant and that [NoMuda's] LSS activities could continue" took place); (Docket No. 26 at 19). Generalized allegations of assurances by unidentified actors are insufficient as a matter of law. *See* Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).

**C.   Unjust Enrichment**

Unjust enrichment under Puerto Rico law is a subsidiary remedy, available only when no other legal precept governs the conduct at issue. Ortiz Andújar v. Estado Libre Asociado, 122 D.P.R. 817, 823 (P.R. 1988).

Plaintiff's allegations sound in tort and were governed from the outset by Article 1802 of the Civil Code of 1930. The fact that those tort claims are now time-barred does not render unjust enrichment available. *See* Ocaso, S.A. v. P.R. Mar. Shipping Auth., 915 F. Supp. 1244, 1263 n.15 (D.P.R. 1996) ("When plaintiffs allege conduct that is covered by an applicable statute, even if plaintiffs have failed to sufficiently allege that claim **or if the**

**claim is time-barred**, it is inappropriate to allow a claim for unjust enrichment.") (emphasis added). Accordingly, the unjust enrichment claim must also be dismissed.

D. <u>**Rule 12(b)(7)**</u>

Because all claims are dismissed under Rule 12(b)(6), the Court need not reach Defendant's arguments under Rule 12(b)(7).

## V.    CONCLUSION

For the foregoing reasons, Defendant's *Motion to Dismiss* is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on January 30, 2026.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE